# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-828V
### (not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| VICKI CAREY, *on behalf of her minor child*, C.C. | \* \* \* | Special Master Oler |
| Petitioner, | \* \* | Filed: February 26, 2018 |
| v. | \* \* \* \* \* | Attorneys' Fees and Costs; Reasonable Basis; Reasonable Hourly Rates; Time Expended; Reasonable Costs; Expert Costs. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* \* \* | |
| Respondent. | \* \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Andrew Donald Downing*, Phoenix, AZ, for Petitioner.

*Darryl R. Wishard*, U. S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS [1]

  On July 12, 2016, Vicki Carey ("Petitioner") filed a petition on behalf of her minor child, C.C., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program"),[2] alleging that C.C. suffered from an adverse reaction[3] as a result of her

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

[3] Petitioner later clarified her position that C.C. developed postural orthostatic tachycardia syndrome ("POTS") and dysautonomia after receiving the Human Papillomavirus ("HPV") vaccination. *See* ECF No. 38 at 1.

third HPV vaccination administered on July 10, 2013.  Petition ("Pet."), dated July 12, 2016
(ECF No. 1).  On June 23, 2017, Petitioner filed a Motion for a Decision Dismissing Petition
(ECF No. 38); a decision dismissing the petition was issued on June 26, 2017.  ECF No. 39.
Judgment was entered on July 3, 2017.  ECF No. 41.  On July 5, 2017, Petitioner filed a Motion
for Attorneys' Fees and Costs.  Fees Application ("Fees App."), dated July 5, 2017 (ECF No.
43).  For the reasons set forth herein, Petitioner is awarded $28,836.06.

## I.    Introduction

Petitioner requested attorneys' fees in the amount of $23,657.00 and costs in the amount
of $3,378.14.  *Id*.  Although a General Order No. 9 statement was not formally filed, Petitioner's
counsel, Mr. Andrew Downing, affirmatively asserted that "Petitioner has not incurred any costs
in pursuit of the claim."  *Id*. at 5.

Respondent filed his response on July 6, 2017.  Respondent's Response ("Resp't's
Resp."), dated July 6, 2017 (ECF No. 44).  While Respondent believes that the petition was filed
in good faith, Respondent argues that a "reasonable basis for the petition ceased as of March 22,
2017, when [Respondent] filed his Vaccine Rule 4(c) report."  *Id*. at 3.  Respondent argues that
Petitioner did not identify a vaccine-related injury, and the medical records show an onset of
symptoms between 15 to 17 months after Petitioner's vaccination.  *Id*. at 1.  Respondent argues
that "[a]t that time, [P]etitioner was on notice that there was no basis to continue her claim, and
nothing that she filed thereafter in this case provided evidence of a reasonable basis to further
pursue this claim."  *Id*. at 3.  Respondent objects to Petitioner's attorneys' fees and costs incurred
after March 22, 2017, including a payment of $1,600.00 made to Petitioner's expert, Dr. Svetlana
Blitshteyn.  *Id*. at 3-4.  Respondent further objects to an award of attorneys' fees for work
performed starting in February 2017 by both Mr. Downing and Ms. Van Cott, who is Mr.
Downing's associate attorney.  *Id*. at 3 n.3.  According to Respondent, both Mr. Downing and
Ms. Van Cott duplicated work during that time period.  *Id*.  Respondent otherwise "recommends
that the Special Master exercise [her] discretion and determine a reasonable award for attorneys'
fees and costs."  *Id*. at 4.

Petitioner filed a reply to address Respondent's objections.  Petitioner's Reply ("Pet't'r
Reply"), dated July 6, 2017 (ECF No. 45).  Petitioner first notes that Respondent did not object
to the good faith requirement or reasonable basis at the time the Petition was filed.  Rather, he
challenges whether reasonable basis existed beginning on March 22, 2017 and thereafter, thus
suggesting that *some* fees award is appropriate.  *Id*. at 1.  Petitioner also notes that Respondent
did not object to the rates requested by Petitioner.  *Id*.  Petitioner argues that Respondent's Rule
4(c) is "not determinative," and that Petitioner did not have "a complete medical chart on [C.C.]
until April 4, 2017 when [the] medical records from Conway Medical Center were received."  *Id*.

Petitioner states that counsel was "engaged in an ongoing investigation into the merits of the case." *Id*.

Regarding Petitioner's expert, Petitioner notes that Dr. Blitshteyn was C.C.'s treating physician who "implicated Gardasil in the causation of Petitioner's complaints" and argues that "[r]easonable basis did not end until that same treater was unable to further provide an opinion on causation after [Mr. Downing] had paid [Dr. Blitshteyn] for reviewing all of Petitioner's prior medical records," which occurred on June 15, 2017. *Id*. at 1-2. Petitioner also states that Dr. Blitshteyn's review of Petitioner's complete medical record "ultimately triggered Petitioner's decision to dismiss." *Id*. at 2 n.1. Petitioner addressed Respondent's duplicative-work objection by arguing that the same tasks performed between attorneys working on a case may be conducted for different purposes, which is not "a true duplication." *Id*. at 2. For example, one attorney may review medical records for "an interview with a possible expert," and the other attorney may review medical records "in advance of writing a motion." *Id*. Petitioner further argues that an associate who is delegated a task "would be unable to perform tasks delegated to her without some review of the file materials." *Id*.

Petitioner also filed Petitioner's Supplement to the Application for Final Attorneys' Fees and Costs on July 6, 2017. Supplemental ("Supp.") Fees App., dated July 6, 2017 (ECF No. 46). Petitioner requests an additional $1,800.00 in attorneys' fees and $0.92 in attorneys' costs for additional work in order to prepare the reply to Respondent's response and to draft a supplemental fees application.[4] Thus, Petitioner requests a total of $28,836.06 in attorneys' fees and costs. *Id*. at 1.

On December 7, 2017, after a review of Petitioner's motion, I issued an order instructing Petitioner to file additional documentation to confirm the hourly rate of Petitioner's expert, Dr. Blitshteyn, as well as her hours expended in this case. Order, dated December 7, 2017 (ECF No. 52). Petitioner filed such documentation on December 11, 2017. ECF No. 53.

The matter of attorneys' fees and costs in this case is now ripe for a decision.

---

[4] Petitioner states she incurred an additional $1,820.92 in attorneys' fees and costs. Supp. Fees App. at 1. However, according to Supp. Fees App., Exhibit ("Ex.") B, she incurred a total of $1,800.92. Because Mr. Downing worked 4.8 hours at a rate of $375.00 per hour, which totals $1,800.00, and because Mr. Downing incurred a postage cost of $0.92, I find that the correct total is $1,800.92.

## II.    Procedural History

The billing records reflect that Petitioner contacted Mr. Downing on July 12, 2016 regarding her claim and they discussed the statute of limitations.[5]  Fees. App., Ex. A at 1. Petitioner filed a petition on behalf of her daughter, C.C., on that very same day, July 12, 2016. Pet.  Petitioner filed medical records on August 29, 2016, September 12, 2016, October 13, 2016, November 3, 2016, November 28, 2016, and January 26, 2017.  ECF Nos. 7, 10, 13, 16, 17, 22. Petitioner filed her statement of completion on January 26, 2017.  ECF No. 23.

Respondent filed a status report on February 21, 2017 informing the court that Petitioner had filed all records necessary for Respondent to evaluate the claim.  ECF No. 25.  Respondent also requested that Petitioner file C.C.'s mental health records relevant to Petitioner's claim, which was so ordered on that same day.  *Id.  See also* Order, dated February 21, 2017 (ECF No. 26).  In compliance with the February Order, Petitioner filed additional medical records on February 23, 2017 and March 20, 2017.  ECF Nos. 27, 29.

On March 22, 2017, Respondent filed his Rule 4(c) Report, arguing that Petitioner was not entitled to compensation.  ECF No. 31.  The former special master assigned to this case, Special Master George Hastings, issued an order in light of Respondent's report, setting a deadline of May 24, 2017 for Petitioner to file an expert report.  Order, dated March 24, 2017 (ECF No. 32).  Petitioner filed an affidavit on April 6, 2017.  Ex. 27.  Petitioner also filed additional medical records on April 10, 2017, and May 22, 2017.  ECF Nos. 34, 35.  On May 24, 2017, Petitioner filed a status report stating that "Dr. Blitshteyn…need[ed] additional time to complete her review of the file and finalize[ ] her report."  Pet'r's Status Report, dated May 24, 2017 (ECF No. 36).  In light of such status report, Special Master Hastings issued an order on May 25, 2017, which extended Petitioner's deadline to file an expert report to July 24, 2017. Non-PDF Order, dated May 25, 2017.  Petitioner filed additional medical records on June 13, 2017.  ECF No. 37.

On June 23, 2017, Petitioner filed a Motion for a Decision Dismissing Petition,[6] and a decision dismissing the petition was issued on June 26, 2017.  ECF Nos. 38, 39.  Judgment was entered on July 3, 2017.  ECF No. 41.

---

[5] The Vaccine Act states, in relevant part, that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or the significant aggravation of such injury."  § 16(a)(2).

[6] Petitioner reiterates the circumstances under which the petition was filed, and also states that the theory of Petitioner's claim "was based, in part, on the fact that C.[C]. developed Dysautonomia and Postural Orthostatic Tachycardia Syndrome (POTS)[ ] after receiving the Gardasil vaccination."  ECF No. 38 at 1.

III.    **Applicable Law and Analysis**

A.  **Requirements of Good Faith and Reasonable Basis**

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is mandatory where a Petitioner is awarded compensation; where compensation is denied, as it was in this case, the special master must first determine whether the petition was brought in good faith and whether the claim had a reasonable basis.  § 15(e)(1).

The good faith requirement is met through a subjective inquiry.  *Di Roma v. Sec'y of Health & Human Servs.*, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith."  *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).  Thus, so long as the petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied.  *See Riley v. Sec'y of Health & Human Servs.*, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma* at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Regarding the reasonable basis requirement, it is incumbent on the Petitioner to "affirmatively demonstrate a reasonable basis," which is an objective inquiry.  *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *Di Roma*, 1993 WL 496981, at *1. The special master examines "the feasibility of the claim," as determined by factors such as "the factual basis, the medical support[,] and jurisdictional issues," *Di Roma* at *1, as well as "the circumstances under which a petition is filed."  *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 288 (2014) (citing *Di Roma*, 1993 WL 496981, at *1).  The Federal Circuit stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim."  *See Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Furthermore, "[a] looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim…However, the statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances." *Chuisano*, 116 Fed. Cl. at 287 (citations omitted).  This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis.  *Hamrick v. Sec'y of Health & Human Servs.*, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Unlike the good faith inquiry, reasonable basis requires more than just Petitioner's belief in her claim.  *See Turner*, 2007 WL 4410030, at *6.  Instead, the claim must at least be supported by medical records or medical opinion.  *Sharp-Roundtree v. Sec'y of Health & Human Servs.*,

2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).  The court expects the attorney to make a pre-filing inquiry into the claim to ensure that it has a reasonable basis.  *See Turner* at *6-7.  However, "special masters have historically been quite generous in finding reasonable basis for petitions."  *Turpin v. Sec'y of Health & Human Servs.*, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); *see Turner* at *6-7.  For instance, special masters have been more lenient if the petition was originally filed *pro se*.  *See Turner* at *6.  In such situations, the bar for establishing reasonable basis can be lowered.  Allowances have also been made for "skeletal" petitions, where reasonable basis is later reinforced with medical records and expert opinions. *Turpin* at *2.

However, even if reasonable basis exists at the time the petition is filed, it "may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent."  *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 288 (2014); *see also Perriera v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (affirming the special master's finding that reasonable basis existed until the evidentiary hearing); *Hamrick*, 2007 WL 4793152, at *4 (observing that "Petitioner's counsel must review periodically the evidence supporting [P]etitioner's claim").

## B.  Whether Petition has Reasonable Basis at Outset

Petitioner is entitled to a presumption of good faith, and Respondent does not contest that the petition was filed in good faith.  *Grice,* 36 Fed. Cl. at 121.  There is no evidence that this petition was brought in bad faith.  Thus, I find that the good faith requirement is satisfied.

Petitioner's claim was, at a minimum, filed with a reasonable basis, and the Respondent does not contest otherwise.  The billing records reflect that Petitioner contacted Mr. Downing on July 12, 2016, which is the same day she filed the petition. Fees. App., Ex. A at 1; Pet. at 1.  At the time of filing, Mr. Downing explained that "[g]iven the alleged vaccination date of [July 10, 2013,]" he filed the petition "to ensure that the statute of limitations period [did] not lapse."  Pet. at 1 n.1.  Mr. Downing further explained that "at least one of Petitioner's treating physicians indicated [a belief that the] vaccination was responsible for her complaints."  *Id*.  Because no objection to reasonable basis was made at the time the petition was filed, the undersigned finds that there was reasonable basis for Petitioner's claim when her petition was filed.

## C.  Whether Reasonable Basis Existed for Maintaining the Petition

Respondent did not question the reasonable basis for the petition until March 22, 2017, the date he filed his Rule 4(c) Report.  Resp't's Resp. at 2-3.  Accordingly, I have conducted an

analysis of reasonable basis between the dates of March 22, 2017 through June 23, 2017, the date Petitioner filed her motion to dismiss the petition.

Dr. Svetlana Blitshteyn became one of C.C.'s treating physicians when she spoke with both C.C. and Petitioner telephonically on October 10, 2016; this conversation took place after C.C.'s pediatrician set up the consultation.  In her notes summarizing the phone consult, Dr. Blitshteyn stated that an "iphone app Stand Test was done and documented an increase in heart rate by 60 bpm within 20 minutes of standing."[7]  Ex. 12 at 1.  Dr. Blitshteyn's impression included, "[p]robable POTS, possible small fiber neuropathy (SFN), subclinical Hashimoto's thyroidism, and episodic weakness."  *Id*. at 2.  In further remarking on the POTS and SFN, Dr. Blitshteyn noted, "[c]linical features in conjunction with results of a stand test are suggestive of [POTS] and possible [SFN], both of which can occur after Gardasil vaccine.  To date, there have been reports of close to a hundred of [sic] patients with similar symptomatology occurring after HPV vaccine [....]"  *Id*.  Dr. Blitshteyn also noted a report that she authored in the European Journal of Neurology published in 2014.  *Id*.  Dr. Blitshteyn recommended that C.C. obtain several additional diagnostic tests "to rule out secondary causes."  *Id*.

Dr. Blitshteyn followed up with C.C. and Petitioner on November 11, 2016.  During this second telephonic consult, Dr. Blitshteyn indicated that C.C. "is diagnosed with POTS, left ulnar and median neuropathy and possible small fiber neuropathy."  Ex. 17 at 1.  Petitioner and C.C. told Dr. Blitshteyn that C.C. experienced symptoms close in time to the second and third HPV vaccinations.  While Respondent is correct in asserting that there is "absolutely nothing in CC's medical records to support this contention" (*see* ECF No. 31 at 8 n.6.), petitioners can establish the onset of symptoms based upon their own allegations, even when those allegations are not supported by contemporaneous medical records.  *Vallenzuela v. Sec'y of Health & Human Servs.*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991).  In making a determination regarding whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing, there must be evidence that this decision was the result of a rational determination.  *Burns by Burns v. Sec'y of Health & Human Servcs*., 3 F.3d 415, 417 (Fed. Cir. 1993).

Petitioner filed a sworn statement on April 6, 2017, detailing C.C.'s onset of symptoms.  *See* Ex. 27.  Petitioner stated that "within one week of receiving the second [HPV vaccine], C.C. developed cold symptoms and a barking cough."  *Id*. at 1 ¶6.  She further stated that such symptoms were not "life-altering and were no more than any other bothersome cold that one

---

[7] POTS in adolescents generally includes "[e]xcessive postural tachycardia (more than 40 beats a minute) with supine to upright positioning on a tilt table."  *See Postural orthostatic tachycardia syndrome and chronic fatigue in adolescents: Working toward recovery*, Mayo Clinic, https://www.mayoclinic.org/medical-professionals/clinical-updates/endocrinology/postural-orthostatic-tachycardia-syndrome-and-chronic-fatigue-in-adolescents (last visited Feb. 22, 2018).

would suffer." *Id.* In regard to C.C.'s third HPV vaccine, Petitioner stated that C.C. "experienced dizzy spells, loss of balance, weakness, anxiety, ear pain, abdominal pain, and nausea." *Id.* at 2 ¶7. Petitioner stated she was not an "anti-vaxxer[,]" did not "associate [C.C.'s] condition with Gardasil at [that] time[,]" and "could not understand what was happening to [her] child." *Id.*

While it is foreseeable that Petitioner's affidavit regarding onset may not have carried the day at an evidentiary hearing, it, (coupled with the medical opinion of Dr. Blitshteyn) provided Petitioner with *some* grounds for proceeding in this case.

On March 24, 2017, Special Master Hastings ordered Petitioner to file an expert report by May 24, 2017 or file a status report regarding her progress to comply. ECF No. 32. According to the billing records, Mr. Downing next called Dr. Blitshteyn on April 12, 2017 about "serving as expert[,] full file review[, and] issues to be addressed as far as pre and post vaccination." Fees. App., Ex. A at 4. Mr. Downing again called Dr. Blitshteyn on May 18, 2017 and May 23, 2017 to follow up, and a call between the two on May 24, 2017, noted "more time requested [and] need for additional records that [Dr. Blitshteyn] is unable to open." *Id.* at 5. Petitioner then filed a status report on May 24, 2017, stating that her expert needed more time to review C.C.'s medical records. ECF No. 36. The special master extended Petitioner's deadline to file an expert report to July 24, 2017.

Dr. Blitshteyn reviewed C.C's medical records on June 15, 2017 (invoice of Dr. Blitshteyn, dated December 11, 2017 (ECF No. 53-1)), and concluded that she was unable to form an opinion as to causation. Pet't'r Reply at 2. Shortly thereafter, Petitioner filed a motion to dismiss on June 23, 2017, one month before her deadline, citing Dr. Blitshteyn's "discussion of issues in claim [and] inability to connect vaccination after full file review." ECF No. 38.

Dr. Blitshteyn has been qualified as an expert in neurology in previous Vaccine Program cases. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 3640610 (Fed. Cl. Spec. Mstr. May 22, 2015); *Turkupolis v. Sec'y of Health & Human Servs.*, No. 10-351V, 2015 WL 393343 (Fed. Cl. Spec. Mstr. Jan. 9, 2015). Because of Dr. Blitshteyn's expertise as a neurologist, her status as C.C.'s treating physician, and her experience in the Vaccine Program, I find that Petitioner reasonably relied on Dr. Blitshteyn's opinion as expressed in the reports summarizing the October 10, 2016 and November 11, 2016 telephone consults with C.C. and Petitioner. Petitioner attempted to have Dr. Blitshteyn document her findings and opinions in an expert report; when Dr. Blitshteyn indicated she was unable to do so, Petitioner moved for dismissal. While it would have been preferable for Dr. Blitshteyn to have conducted her complete review of C.C.'s medical records earlier than June 15, 2017, I do not attribute this delay to Petitioner's counsel. I credit counsel's willingness to address the case

deficiencies with his client and to move for dismissal close in time to Dr. Blitshteyn's inability to provide a supporting expert opinion.

I acknowledge that this is a close case; however, considering the totality of the circumstances, I find that a reasonable basis did exist for the petition and continued through the date Petitioner filed her motion to dismiss.

### D. Reasonable Attorneys' Fees

The Federal Circuit has approved the use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under the lodestar approach, the Court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The Court may then make an upward or downward departure from the initia-l calculation based on other specific findings. *Id*. at 1348. Special masters may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" include "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522.

### i. Hourly Rates

Petitioner requests the following hourly rates for Mr. Downing: $350.00 per hour for work performed in 2016 and $375.00 per hour for work performed in 2017. *See generally* Fees. App., Ex. A. Petitioner also requests an hourly rate of $195.00 for work performed by Ms. Van

Cott, as well as hourly rates of $100.00 per hour in 2016 and $135.00 per hour in 2017 for work performed by legal assistants. *Id*. Respondent has no objection to the hourly rates requested by the Petitioner. Petitioner's counsel and his staff have previously been determined eligible for forum rates, and have been awarded the requested hourly forum rates.[8] *See Bales v. Sec'y of Health & Human Servs.*, No. 15-882V, 2017 WL 2243094 (Fed. Cl. Spec. Mstr. Apr. 26, 2017); *see also McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *3 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (providing a framework for consideration of forum rates for work performed in the Vaccine Program). The undersigned adopts the reasoning in *Bales* for the instant analysis and awards Petitioner's counsel hourly rate amounts in accordance with that decision.

### ii.  Time Expended

In regard to the time expended by Petitioner's counsel, Respondent objects to an award of attorneys' fees for "work performed by Attorney Van[ ] Cott starting in February 2017" as such work "repeated much of what had been done by Attorney Downing early on in this case." Resp't's Resp. at 3 n.3. Respondent argues that Ms. Van Cott's time expended is duplicative; however, Petitioner argues that such work is not a "true duplication[,]" explaining that "[t]here are always instances where an associate may have to perform an activity that may have been previously done by the lead counsel[,] [….] [Such associate] would be unable to perform tasks delegated to her without some review of the file materials." Pet't'r Reply at 2. Petitioner further argues that the same tasks performed between attorneys working on a case may be conducted for different purposes, for example, one attorney may review medical records for "an interview with a possible expert," and the other attorney may review medical records "in advance of writing a motion." *Id.*

The billing record reflects that Ms. Van Cott reviewed C.C.'s medical records in order to draft Petitioner's witness statement and an amended petition. Fees App., Ex. A at 30-31. Although both Mr. Downing and Ms. Van Cott reviewed C.C.'s medical records at some point during their representation of Petitioner's claim, Ms. Van Cott drafted Petitioner's witness statement and amended petition; Mr. Downing did not. Certainly both attorneys needed to review the medical records before performing any substantial work on the case. The undersigned finds that the time expended in this case by the attorneys is not duplicative and is reasonable.

---

[8] The 2017 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf. The hourly rates contained in the 2017 Fee Schedule are based upon *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

### E.  Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).  Petitioner requests a total of $3,378.14 in attorneys' costs.  Respondent objects to a payment of $1,600.00 made to Petitioner's expert, Dr. Blitshteyn.  The undersigned has reviewed the costs submitted with Petitioner's request and for the reasons set forth below, finds the costs to be reasonable.

### Expert Costs: Dr. Blitshteyn

Petitioner requests $1,600.00 for a retainer fee paid to Dr. Svetlana Blitshteyn by her counsel.  The request is supported by an invoice from Dr. Blitshteyn detailing the number of hours expended to review Petitioner's record and the hourly rate she charged.  ECF No. 53.  Dr. Blitshteyn spent four hours reviewing Petitioner's record at a rate of $400.00 per hour.  *Id.*  Dr. Blitshteyn has previously been awarded an hourly rate of $400.00 by other special masters.  *See, e.g.*, *Turkupolis*, 2015 WL 393343, at *8 ("the undersigned finds that Dr. Blitshteyn's credentials, experience, sub-specialty, and geographic location merit a $400 rate…and that she used her time quite efficiently"); *Barry v. Sec'y of Health & Human Servs.*, No. 12-039V, 2016 WL 6835542, at *9 (Fed. Cl. Spec. Mstr. Feb. 9, 2017) ("The undersigned will compensate Dr. Blitshteyn at $400.00 per hour"). I do not find that four hours is an excessive amount of time to review Petitioner's records. Accordingly, I award Petitioner's expert costs in the amount of $1,600.00.

### IV.    Conclusion

Based on the foregoing, the undersigned **GRANTS** Petitioner's Motion for Attorneys' Fees and Costs.  The undersigned awards **$28,836.06**,[9] representing $25,457.00 in attorneys' fees and $3,379.06 in costs, in the form of a check payable jointly to Petitioner, Vicki Carey, and Petitioner's counsel, Mr. Andrew D. Downing, Esq. of Van Cott & Talamante, PLLC.  The clerk shall enter judgment accordingly.[10]

---

[9] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.  Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See Beck* v. *Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master